Abigail Bartine (*pro hac vice*)
Elaine Liu (*pro hac vice*)
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606
(312) 782-0600
abartine@mayerbrown.com
eliu@mayerbrown.com
*Attorneys for Defendant Cushman & Wakefield Benefit Plan*

David J. Butler (*pro hac vice*)
Rachel A. Smoot (*pro hac vice*)
TAFT STETTINIUS & HOLLISTER LLP
65 East State Street, Suite 1000
Columbus, OH 43215
(614) 221-2838
dbutler@taftlaw.com
rsmoot@taftlaw.com
*Attorneys for Defendant Quantum Health, Inc.*

Jeffery S. Williams (Utah Bar No. 6054)
NELSON CHRISTENSEN
HOLLINGWORTH & WILLIAMS
68 South Main Street, #600
Salt Lake City, UT 84101
(801) 531-8400
jeffw@nchwlaw.com
*Attorney for Defendants Cushman & Wakefield Benefit Plan & Quantum Health, Inc.*

---

## UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

---

| | |
|---|---|
| B.F., individually and on behalf of C.F., a minor,<br><br>        Plaintiffs,<br><br>vs.<br><br>MERITAIN HEALTH INC., QUANTUM HEALTH INC., and the CUSHMAN & WAKEFIELD BENEFIT PLAN<br><br>        Defendants. | Case No.: 2:21-cv-00083-DBB-JCB<br><br>**DEFENDANTS CUSHMAN & WAKEFIELD BENEFIT PLAN AND QUANTUM HEALTH, INC.'S PARTIAL MOTION TO DISMISS THE AMENDED COMPLAINT**<br><br>District Judge David Barlow<br><br>Magistrate Judge Jared C. Bennett |

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

STATEMENT OF RELIEF SOUGHT AND GROUNDS FOR MOTION ................... 1

FACTUAL BACKGROUND ......................................................................................... 2

I.      The Cushman & Wakefield Benefit Plan ......................................................... 2

II.     Plaintiffs' Claim and Appeals for Benefits Under the Plan ........................... 4

STANDARD OF REVIEW ........................................................................................... 6

ARGUMENT .................................................................................................................. 7

I.      Plaintiffs Fail to Allege a Plausible Parity Act Violation. ............................. 8

        A.      Plaintiffs Do Not Sufficiently Allege Facts to Identify an Analogous
                Medical or Surgical Treatment Covered by the Plan. ........................ 9

        B.      Plaintiffs Do Not Plausibly Plead Facts Establishing a Coverage Disparity. ....... 12

                1.      Plaintiffs Rely on Conclusory Allegations. ............................ 12

                2.      Plaintiffs' Allegations Are Contradicted by the Plan's Terms, the
                        Medical Necessity Criteria, and the Benefits Determination Letters
                        Cited by Plaintiff. ...................................................... 14

II.     Plaintiffs' Parity Act Claim Is Impermissibly Duplicative of Their Benefits Claim. ....... 19

III.    Plaintiffs Were Not Entitled to Any Parity Act Compliance Analysis Documents. ........ 22

IV.     Plaintiffs Lack Standing to Seek Relief Pertaining to Other Participants and
        Beneficiaries of the Plan. ........................................................... 22

        CONCLUSION ................................................................................. 24

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Andy B. v. AvMed, Inc.*,
    2020 WL 838041 (D. Utah Feb. 20, 2020) (unpublished) .......................................................12

*Anne M. v. United Behavioral Health*,
    2019 WL 1989644 (D. Utah May 6, 2019) (unpublished) .......................................................8

*Ashcroft v. al-Kidd*,
    563 U.S. 731 (2011) .................................................................................................................2

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) .................................................................................................................7

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) .............................................................................................................6, 13

*Bronson v. Swensen*,
    500 F.3d 1099 (10th Cir. 2007) ..............................................................................................23

*Charles W. v. United Behavioral Health*,
    2019 WL 6895331 (D. Utah Dec. 18, 2019) (unpublished) ...............................................9, 10

*City of Los Angeles v. Lyons*,
    461 U.S. 95 (1983) .................................................................................................................23

*DaimlerChrysler Corp. v. Cuno*,
    547 U.S. 332 (2006) .................................................................................................................23

*E.M. v. Humana*,
    2019 WL 4696281 (D. Utah Sept. 26, 2019) (unpublished) ..................................................20

*E.W. v. Health Net Life Ins. Co.*,
    2020 WL 2543353 (D. Utah May 19, 2020) (unpublished) ...................................................13

*Est. of Harmon v. Salt Lake City*,
    471 F. Supp. 3d 1203 (D. Utah 2020) .....................................................................................2

*GFF Corp. v. Associated Wholesale Grocers*,
    130 F.3d 1381 (10th Cir. 1997) ...............................................................................................2

*Grider v. City & Cty. of Denver*,
    958 F. Supp. 2d 1262 (D. Colo. 2013) ...................................................................................23

*James C. v. Anthem Blue Cross & Blue Shield*,
2021 WL 2532905 (D. Utah June 21, 2021) (unpublished), *appeal dismissed*
(Nov. 30, 2021) ................................................................................................17, 19

*Jeff N. v. United HealthCare Ins. Co.*,
2019 WL 4736920 (D. Utah Sept. 27, 2019) (unpublished)......................................8

*John R. v. United Behav. Health*,
2019 WL 6255085 (D. Utah Nov. 22, 2019) (unpublished)................................2, 10

*Julie L. v. Excellus Health Plan, Inc.*,
447 F. Supp. 3d 38 (W.D.N.Y. 2020) ....................................................................17

*Kerry W. v. Anthem Blue Cross and Blue Shield*,
2019 WL 2393802 (D. Utah June 6, 2019) (unpublished) .....................................22

*Kirsten W. v. California Physicians' Serv.*,
2021 WL 83264 (D. Utah Jan. 11, 2021) (J. Barlow) (unpublished) ................13, 14

*Lefler v. United HealthCare of Utah, Inc.*,
162 F. Supp. 2d 1310 (D. Utah 2001) ....................................................................19

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992)................................................................................................7

*M.N. v. United Healthcare Ins.*,
2020 WL 1644199 (D. Utah Apr. 2, 2020) (J. Barlow) (unpublished)..............12, 13

*Margaret v. Oxford Health Plans (NJ), Inc.*,
2021 WL 391432 (D. Utah Feb. 4, 2021) (J. Barlow) (unpublished)................12, 13

*Mark C. v. United Healthcare Ins. Co.*,
2021 WL 288578 (D. Utah Jan. 28, 2021) (J. Barlow) (unpublished) ....................13

*N.F. by & through M.R. v. Premera Blue Cross*,
2021 WL 4804594 (W.D. Wash. Oct. 14, 2021) (unpublished)..............................17

*Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville*,
508 U.S. 656 (1993)..............................................................................................23

*Ridge at Red Hawk, L.L.C. v. Schneider*,
493 F.3d 1174 (10th Cir. 2007) ..............................................................................6

*Sarah W. v. CIGNA Health & Life Ins. Co.*,
2020 WL 1030716 (D. Utah Mar. 3, 2020) (unpublished) .....................................13

*Scott v. Harris*,
    550 U.S. 372 (2007).................................................................................................2

*Varity Corp. v. Howe*,
    516 U.S. 489 (1996)...............................................................................................19

*Welp v. Cigna Health & Life Ins. Co.*,
    2017 WL 3263138 (S.D. Fla. July 20, 2017) (unpublished)....................................9

*William D. v. United Healthcare Ins. Co.*,
    2020 WL 4747765 (D. Utah Aug. 17, 2020) (J. Barlow) (unpublished)...........9, 13

*Williams v. FedEx Corp. Servs.*,
    2015 WL 248570 (D. Utah Jan. 20, 2015).............................................................20

**Statutes, Rules and Regulations**

29 C.F.R.
    § 2590.712(c)(2)(i)..................................................................................................8
    § 2590.712(c)(4)(i)............................................................................................8, 14

45 C.F.R. § 146.136(c)(4)(i) .....................................................................................17

26 U.S.C. § 9812.......................................................................................................22

29 U.S.C.
    § 1024(b)(4) ..........................................................................................................22
    § 1132(a)(1)(B)......................................................................................................19
    § 1132(a)(3) ...........................................................................................................19
    § 1132(c) ...............................................................................................................22
    § 1185a(a)(3)(A)(ii) .................................................................................................8
    § 1185a(a)(8)(A) ....................................................................................................22

42 U.S.C. § 300gg-26 ...............................................................................................22

Fed. R. Civ. P. 12(b)(1)................................................................................2, 7, 22, 23

Fed. R. Civ. P. 12(b)(6)........................................................................................2, 6

**Other Authorities**

5A Charles Alan Wright & Arthur R. Miller, et al., Federal Practice & Procedure
    Civ. § 1327 (4th ed.) ...............................................................................................2

## STATEMENT OF RELIEF SOUGHT AND GROUNDS FOR MOTION

Plaintiffs B.F. and C.F. ("Plaintiffs") brought this lawsuit seeking to recover benefits to which they are not entitled under the Cushman & Wakefield Benefit Plan ("Cushman Plan" or "Plan"). Specifically, Plaintiffs contend in Count II of the Amended Complaint (ECF No. 58) that the Cushman Plan, Quantum Health Inc. ("Quantum"), and Meritain Health Inc. (collectively, "Defendants") violated the Mental Health Parity and Addiction Equity Act of 2008 ("Parity Act") by denying benefits for C.F.'s mental health treatment at a facility in Colorado.[1]

Plaintiffs fail to state a claim under ERISA Section 502(a)(3) in Count II, because they do not allege sufficient facts to plausibly establish any Parity Act violation. Plaintiffs neither identify an appropriate medical or surgical analogue covered under the Plan, nor plausibly allege a disparity in treatment limitations for mental health or substance use disorder benefits as compared to analogous medical or surgical benefits. Even though Defendants produced all treatment criteria documents requested by Plaintiffs before they filed their Amended Complaint, not only do Plaintiffs repeatedly rely on conclusory allegations—which is fatal to their claim—but also the terms of the Cushman Plan, the medical necessity criteria, and the benefit determination letters that Plaintiffs expressly reference in their Amended Complaint contradict their allegations.

Plaintiffs' Parity Act claim also fails because it is an improper attempt to repackage their benefits claim under ERISA Section 502(a)(1)(B) in Count I as a separate cause of action. Plaintiffs' alleged Parity Act injury is inseparable from the denial of benefits under the Plan. And because all of Plaintiffs' requests for equitable relief ultimately seek a determination and payment of Plan benefits, their benefits claim can adequately provide that relief.

---

[1] Cushman Plan and Quantum are filing answers to Count I, which alleges that Plaintiffs are entitled to benefits under the terms of the Cushman Plan pursuant to ERISA Section 502(a)(1)(B).

Moreover, Plaintiffs lack standing to seek the order for an accounting of funds pertaining to other Plan participants and beneficiaries that they request through the Amended Complaint, because such relief does not redress Plaintiffs' alleged injury—the denial of their benefits claim under the Plan for C.F.'s mental health treatment.

For these reasons, and the reasons described more fully below, Cushman Plan and Quantum respectfully request that the Court dismiss with prejudice Plaintiffs' Parity Act claim (Count II) for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). The Court should also dismiss with prejudice Plaintiffs' request for relief pertaining to other Plan participants and beneficiaries for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1).

## **FACTUAL BACKGROUND**[2]

### I.      The Cushman & Wakefield Benefit Plan

The Cushman Plan is an employee welfare benefits plan governed by the Employee Retirement Income Security Act of 1974 ("ERISA"). Am. Compl. ¶ 3; Ex. A (Plan Document and Summary Plan Description, Amended and Restated Effective January 1, 2019).[3] The Plan specifies

---

[2] Unless stated otherwise, this background information is based on Plaintiffs' factual allegations in the Amended Complaint, which are assumed to be true solely for the purposes of this motion. *Ashcroft v. al-Kidd*, 563 U.S. 731, 734 (2011). When, however, the allegations in a complaint contradict documents referenced by the complaint, the documents control. *See, e.g.*, *Est. of Harmon v. Salt Lake City*, 471 F. Supp. 3d 1203, 1210 (D. Utah 2020) (citing *Scott v. Harris*, 550 U.S. 372, 380–81 (2007)); 5A Charles Alan Wright & Arthur R. Miller, et al., Federal Practice & Procedure Civ. § 1327 (4th ed.).

[3] Because the Plan is referenced in and is central to the Amended Complaint (*e.g.*, Am. Compl. ¶¶ 3, 9, 14), it may be considered on this motion to dismiss. *See, e.g.*, *GFF Corp. v. Associated Wholesale Grocers*, 130 F.3d 1381, 1384–85 (10th Cir. 1997) ("[I]f a plaintiff does not incorporate by reference or attach a document to its complaint, but the document is referred to in the complaint and is central to the plaintiff's claim, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss."); *see also John R. v. United Behav. Health*, 2019 WL 6255085, at *4 (D. Utah Nov. 22, 2019) (unpublished) (considering plan terms in granting motion to dismiss Parity Act claim).

that, other than expenses for certain routine care or preventive services, expenses are eligible for coverage "only if" they are "[d]ue to Illness or Injury provided such services are ordered and performed by a Physician, Medically Necessary and not otherwise excluded under the Plan." Ex. A, at 47; *see id.* at 69 ("Expenses which are determined not to be Medically Necessary will not be considered eligible."). This coverage extends to both medical or surgical care and mental health or substance use treatment. *Id.* at 106 (defining "Illness" as "a non-occupational bodily disorder, disease, physical sickness, pregnancy (including childbirth and miscarriage), Mental Disorder or Substance Use Disorder"); *see also* Am. Compl. ¶ 46.

The Plan specifies the types of facilities and treatments eligible for benefits under the Plan. For example:

- "Rehabilitation Facility" is defined as a "facility" that meets a number of requirements, including that it (i) "must be for the treatment of acute Injury or Illness," (ii) "is licensed as an acute Rehabilitation Facility," and (iii) provides "nursing services" "24 hours a day." Ex. A, at 60, 109.

- "Skilled Nursing Facility" is defined as a "facility" that must provide, among other things, (i) "[s]ervices to help restore patients to self-care in essential daily living activities" and (ii) "24 hour per day nursing services by licensed nurses." *Id.* at 110.

- "Hospice" is defined as an "agency" that must provide services to "terminally ill individuals" "with a life expectancy of 1 year or less." *Id.* at 52, 105.

- "Intensive Outpatient Therapy" is defined as "a coordinated approach that involves multiple disciplines for an individual who can maintain their own personal safety with some outside assistance." *Id.* at 10.

The Plan does not specify a definition for a "residential treatment center." It broadly defines "Mental Disorder" as "any disease or condition, regardless of whether the cause is organic, that is classified as a Mental Disorder in the current edition of the International Classification of Diseases published by the U.S. Department of Health and Human Services," for which "care, supplies and treatment" are covered under the Plan, "including, but not limited to treatment for autism, ADD and ADHD and family counseling." *Id.* at 54, 108. The Plan similarly defines and provides coverage for "care, supplies and treatment" of "Substance Use Disorders." *Id.* at 61, 110.

The Plan also incorporates a "Care Coordination" process managed by Quantum that "coordinate[s] activities and information flow between the providers" to help Plan participants and beneficiaries obtain healthcare services and benefits. *Id.* at 5. As Care Coordination Administrator, Quantum coordinates the review of benefit claims and appeals pursuant to the terms of the Plan. *Id.* at 86–89, 121. This review includes the application of medical necessity criteria, including any that may be further described outside of the Plan document itself. *See, e.g.*, Am. Compl. ¶¶ 12, 22, 28; Ex. B at ADMIN_BF_0000001591 (Residential Mental Health Treatment Criteria); Ex. C at ADMIN_BF_0000002406 (Subacute Skilled Nursing Facility Criteria).[4]

## II.    Plaintiffs' Claim and Appeals for Benefits Under the Plan[5]

Plaintiff B.F. is a participant in the Plan and Plaintiff C.F. is a beneficiary of the Plan. Am. Compl. ¶ 3. Plaintiffs seek Plan coverage, beginning on July 15, 2019, for mental health treatment

---

[4] Because the medical necessity criteria, including for residential mental health treatment and skilled nursing facilities, are referenced in and are central to the Amended Complaint (*e.g.*, Am. Compl. ¶¶ 46–47), they may be considered on this motion to dismiss. *See supra* note 2.

[5] Although Plaintiffs allege otherwise, Quantum denies that it had the authority or responsibility to determine Plaintiffs' benefit appeals. Pursuant to the terms of the Plan, Plaintiffs' appeals were evaluated by a third party independent review organization ("IRO") not named in this action. *See* Ex. A, at 88–91.

that C.F. received at Forest Heights Lodge, which Plaintiffs allege is a residential treatment facility in Colorado that provides in-patient services for mental health, behavioral, and substance abuse issues. *Id.* ¶¶ 4–5, 11–12.

In a letter dated August 12, 2019, Quantum informed Plaintiffs that C.F.'s treatment did not qualify for benefits under the Plan because it was not medically necessary. *Id.* ¶ 12. Quantum explained that a medical director had reviewed Plaintiffs' eligibility for benefits using "nationally recognized criteria." *Id.* Explaining that Forest Heights Lodge does not provide nursing services 24 hours a day, 7 days a week, nor a minimum of weekly visits with a psychiatrist, Quantum stated that other "less restrictive" care, such as "Intensive Outpatient Programming," could be provided instead. *Id.*

Quantum allegedly upheld the denial of benefits in response to Plaintiffs' November 22, 2019 first-level appeal and their January 28, 2020 second-level appeal. *Id.* ¶¶ 13, 22–23, 28. In both appeals, Plaintiffs suggested that Quantum improperly applied the Plan's medical necessity criteria and that it may have impermissibly imposed limitations on behavioral health treatment that were more stringent than for medical or surgical care. *Id.* ¶¶ 14–18, 23–25. While Plaintiffs acknowledged that Quantum provided them with a copy of the relevant clinical guidelines used to evaluate their benefits claim (as requested), they allege that Defendants did not provide them with all relevant Plan documents at the time of the appeal process. *Id.* ¶¶ 16, 34, 61.

In allegedly affirming the denial of benefits, Quantum consistently relied on reviews performed by medical directors in determining that C.F.'s treatment was not medically necessary under the terms of Plan. *Id.* ¶¶ 22, 28. In the first-level appeal determination letter dated December 9, 2019, Quantum explained that "the documentation provided did not indicate [C.F.] required psychiatric interventions that could not be carried out safely and effectively at a less intensive level

of care" and that Forest Heights Lodge lacked the nursing and psychiatric services needed to be considered a residential treatment center under "national criteria." *Id.* ¶ 22. Similarly, in its second-level appeal determination letter dated February 13, 2020, Quantum explained that "the documentation provided indicated [C.F.] was medically stable, able to provide for his basic self-care needs, and did not require psychiatric interventions that could not be carried out safely and effectively at a less intensive level of care." *Id.* ¶ 28.

At Plaintiffs' request, an external review agency reviewed their benefits claim. *Id.* ¶¶ 29–31. That agency affirmed the denial of Plaintiffs' benefits claim, also finding that C.F.'s treatment was not medically necessary as required under the Plan's terms because C.F. "had no objectively noted problems of any type that would have needed . . . the continuation of 24 hour care, supervision, observation, management, or containment." *Id.* ¶ 31.

Plaintiffs now bring this lawsuit asserting a claim for benefits under ERISA Section 502(a)(1)(B) (Count I) and a Parity Act claim under ERISA Section 502(a)(3) (Count II). After Defendants "produced all documents requested by Plaintiff to date" that Plaintiffs claimed they were entitled to under Parity Act regulations and Plaintiffs "review[ed] the documents" (ECF No. 55, at 2), Plaintiffs filed the Amended Complaint, adding certain allegations with respect to the Parity Act claim. That second count is the subject of this partial motion to dismiss. After the resolution of this motion, Cushman Plan and Quantum intend to move for summary judgment on Plaintiffs' benefits claim based on the administrative record governing that claim.

## **STANDARD OF REVIEW**

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177

(10th Cir. 2007). Requiring more than "a sheer possibility that a defendant has acted unlawfully," this plausibility standard mandates that a plaintiff "plead[] factual content that allows the court to draw the reasonable inference that the defendant is responsible for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While a court must liberally construe allegations in favor of the plaintiff, the court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Without well-pled facts to support a claim, the claim must be dismissed.

Under Federal Rule of Civil Procedure 12(b)(1), a claim or a request for relief may be dismissed for a lack of subject matter jurisdiction when a plaintiff lacks standing to assert it. To establish Article III standing, (1) a plaintiff must have suffered a concrete and particularized "injury in fact," (2) there must be a causal connection between the injury and the conduct complained of, and (3) it must be "likely" that the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992).

## **ARGUMENT**

In Count II, Plaintiffs fail to state a claim under ERISA Section 502(a)(3) because they do not allege facts sufficient to plausibly allege a Parity Act violation and because they improperly seek to recover the same benefits at issue in their ERISA Section 502(a)(1)(B) claim (Count I). Plaintiffs also lack Article III standing to seek the requested relief pertaining to other Plan participants and beneficiaries.

## I.    Plaintiffs Fail to Allege a Plausible Parity Act Violation.

The Parity Act bars a group health benefits plan from disfavoring mental health or substance use disorder benefits. *See* 29 U.S.C. § 1185a(a)(3)(A)(ii).[6] In particular, a plan may not impose non-quantitative treatment limitations more stringently to the mental health benefits than comparable medical and surgical benefits "under the terms of the plan (or health insurance coverage) as written" or "in operation, any processes, strategies, evidentiary standards, or other factors used in applying the [limitations]." 29 C.F.R. § 2590.712(c)(4)(i). To state a Parity Act claim, a plaintiff must plausibly allege either that the benefits plan, on its face, discriminates against mental health treatment or coverage, or that the plan is discriminatory in application. *Anne M. v. United Behavioral Health*, 2019 WL 1989644, at *2 (D. Utah May 6, 2019) (unpublished).

As an initial matter, Plaintiffs do not (and cannot) bring a facial challenge under the Parity Act.[7] *Cf.* Am. Compl. ¶¶ 48–49, 52 (alleging that Quantum imposed requirements "inconsistent with the terms and conditions of the Plan" and improperly "applied" medical necessity criteria in violation of the Parity Act). Nor can Plaintiffs succeed on their as-applied theory. To state an actionable as-applied Parity Act claim, a plaintiff must plausibly establish four elements:

---

[6] *See also* 29 C.F.R. § 2590.712(c)(2)(i) (prohibiting a plan from applying "any financial requirement or treatment limitation to mental health or substance use disorder benefits in any classification that is more restrictive than the predominant financial requirement or treatment limitation of that type applied to substantially all medical/surgical benefits in the same classification").

[7] To establish a facial violation of the Parity Act, a plaintiff "must correctly identify [the plan's express] limitation and compare it to a relevant analogue" to show that it leads to a disparity in treatment. *See, e.g.*, *Jeff N. v. United HealthCare Ins. Co.*, 2019 WL 4736920, at *3 (D. Utah Sept. 27, 2019) (unpublished) (internal citations and quotation marks omitted). Plaintiffs fail to do so. This is because the Cushman Plan, by its terms, does not discriminate against mental health or substance use treatment. To be eligible for coverage, the Plan imposes a uniform "medical necessity" requirement for all treatment, including for medical or surgical care. *See* Ex. A, at 47, 69.

> (1) [T]he relevant group health plan is subject to the Parity Act; (2) the plan provides both medical/surgical benefits and mental health/substance use disorder benefits; (3) the defendant applied a facially-neutral plan term more restrictively to limit mental health/substance use disorder benefits; and (4) defendant applied the same facially-neutral plan term to medical/surgical treatment in the same classification as—or at least analogous to—the mental health/substance use disorder treatment in question.

*William D. v. United Healthcare Ins. Co.*, 2020 WL 4747765, at *3 (D. Utah Aug. 17, 2020) (J. Barlow) (unpublished) (citing cases).[8] Cushman Plan and Quantum have produced all the additional documents that Plaintiff requested regarding treatment criteria, including for the medical or surgical benefits that Plaintiffs claim are analogous (*see* ECF No. 55, at 2), which demonstrate that Plaintiffs' as-applied theory is meritless. Nonetheless, Plaintiffs' Amended Complaint continues to rely on unsupported, conclusory allegations to the contrary. Because Plaintiffs do not sufficiently allege an analogous medical or surgical treatment that is covered by the Plan, and because they do not allege facts showing that Defendants imposed more restrictive treatment limitations on mental health or substance use disorder benefits, their Parity Act claim fails.

### A. Plaintiffs Do Not Sufficiently Allege Facts to Identify an Analogous Medical or Surgical Treatment Covered by the Plan.

Plaintiffs fail to adequately identify any analogous medical or surgical benefit covered by the Plan, as required to state a Parity Act violation. In *Charles W. v. United Behavioral Health*, in dismissing the Parity Act claim, the court held that the plaintiffs' generic allegation that "sub-acute inpatient treatment settings such as skilled nursing facilities, inpatient hospice care, and

---

[8] *See, e.g.*, *Welp v. Cigna Health & Life Ins. Co.*, 2017 WL 3263138, at *6 (S.D. Fla. July 20, 2017) (unpublished) (requiring a plaintiff to identify, "at the very least, . . . the treatments in the medical/surgical arena that are analogous to the sought-after mental health/substance abuse benefit and allege that there is *a* disparity in their limitation criteria").

rehabilitation facilities" provide a relevant comparison was "simply too broad to satisfy the requirement that [the plaintiffs] identify sufficient analogous treatment areas." 2019 WL 6895331, at *5 (D. Utah Dec. 18, 2019) (unpublished). Likewise, here, Plaintiffs make the similarly vague and conclusory allegation that analogous medical or surgical benefits "include sub-acute inpatient treatment facilities, such as skilled nursing, inpatient rehabilitation, and inpatient hospice facilities." Am. Compl. ¶ 47; *see also id.* ¶¶ 49, 52 (references to an unspecified "non-acute" or "sub-acute inpatient medical or surgical setting" and "an intermediate care facility, such as a skilled nursing or rehabilitation facility"). However, Plaintiffs do not even attempt to specify all the settings or facilities that they contend were treated more favorably than their claim for mental health benefits. And Plaintiffs fail to plausibly allege any facts showing that these unidentified settings or facilities are even comparable to Forest Heights Lodge. "[W]ithout more elaboration," Plaintiffs' allegations are insufficient. *Charles W.*, 2019 WL 6895331, at *5.

Even assuming that Plaintiffs can rely on such broad and conclusory allegations, Plaintiffs' alleged analogues are inapt and get them no closer to stating a Parity Act claim for other reasons. For starters, Plaintiffs' vague assertion that hospice care is an analogous benefit to a residential mental health treatment fails because courts have rejected similar allegations about hospice facilities. *See, e.g.*, *John R. v. United Behavioral Health*, 2019 WL 6255085, at *6 n.8 (D. Utah Nov. 22, 2019) (unpublished) ("The court does not understand how inpatient hospice care is at all analogous to a . . . residential mental health treatment program."); *Charles W.*, 2019 WL 6895331, at *6 n.3 ("Plaintiffs' analogy to hospice care is not plausible.").

The Plan's terms further undermine Plaintiffs' new allegation that "inpatient hospice facilities" are an appropriate "sub-acute" comparator. In contrast to the residential treatment center at issue for C.F.—where patients with "sub-acute" conditions receive care in order to improve their

health and return to non-residential settings—under the Plan, a hospice provides end-of-life care to "terminally ill" patients "with a life expectancy of 1 year or less," which may include "Short-term Inpatient Hospital care when needed in periods of crisis." *Compare* Ex. A, at 52 (Plan hospice criteria) *with* Ex. B (residential mental health treatment criteria), at ADMIN_BF_0000001592 ("Treatment is focused on stabilization and improvement of functioning and reintegration with parents/relatives or guardians"), 1595 ("As a result of the interventions provided at this level of care, the symptoms and/or behaviors that led to the admission can be reasonably expected to show improvement such that the individual will be capable of returning to the community and to a less restrictive level of care."). Plaintiffs fail to allege any facts suggesting otherwise.

In addition, Plaintiffs contend that a "rehabilitation facility" is an analogous "sub-acute" treatment setting, but that allegation is contravened by the Plan's language. Although Plaintiffs suggest otherwise, the Plan's terms do not provide coverage specifically for a "sub-acute" rehabilitation facility. *See* Am. Compl. ¶ 55 ("Defendants do not have medical necessity criteria (*beyond the terms of the Plan itself*) for sub-acute inpatient rehabilitation facilities.") (emphasis added). In actuality, the Plan offers benefits for a "rehabilitation facility" *only* when the facility provides treatment that meets more stringent "acute" criteria—not "sub-acute" criteria. Ex. A, at 109 (providing that a rehabilitation facility "must be for the treatment of *acute* Injury or Illness" and "is licensed as an *acute* Rehabilitation Facility") (emphasis added).

As a result, Plaintiffs do not—and cannot—plausibly allege any relevant comparison to medical or surgical benefits sufficient to state a Parity Act claim.

**B.  Plaintiffs Do Not Plausibly Plead Facts Establishing a Coverage Disparity.**

*1.  Plaintiffs Rely on Conclusory Allegations.*

Plaintiffs' failure to allege any facts *comparing* treatment limitations for mental health or substance use disorder benefits relative to medical or surgical benefits, as well as showing how the Plan imposes a more restrictive treatment limitation on mental health or substance use disorder benefits, is also fatal to their Parity Act claim. Even if "Plaintiffs have alleged facts regarding their own experience," where "Plaintiffs have made only conclusory allegations about any medical or surgical analogue and the as-applied discrimination involving any analogue," the Parity Act claim must be dismissed. *Margaret v. Oxford Health Plans (NJ), Inc.*, 2021 WL 391432, at *3 (D. Utah Feb. 4, 2021) (J. Barlow) (unpublished). Because Parity Act claims are "necessarily comparative," Plaintiffs "must plead facts involving actual, real-world, discrimination, not just a theoretical possibility." *M.N. v. United Healthcare Ins.*, 2020 WL 1644199, at *5 (D. Utah Apr. 2, 2020) (J. Barlow) (unpublished); *see also Andy B. v. AvMed, Inc.*, 2020 WL 838041, at *3 (D. Utah Feb. 20, 2020) (unpublished) (dismissing Parity Act claim where plaintiffs allege "the Plan's medical necessity requirements for inpatient mental health treatment benefits are more stringent or restrictive than the medical necessity criteria applied to analogous medical or surgical benefits, such as skilled nursing facilities, inpatient hospice care, and rehabilitation facilities," because the claim "is supported by speculative statements, legal conclusions, and recitals of the statutory language of the Parity Act").

In *Margaret*, the plaintiffs alleged that the defendant United Behavioral Health "d[id] not require individuals receiving treatment at sub-acute inpatient facilities for medical/surgical conditions to satisfy acute medical necessity criteria in order to receive benefits" and that the defendant's denial "process resulted in disparity because [it] denied coverage for mental health

benefits when the analogous levels of medical or surgical benefits would have been paid by the Plan." 2021 WL 391432, at *3. While the plaintiffs "identif[ied] skilled nursing facility treatment, inpatient hospice care, and rehabilitation facility as medical or surgical analogues," this Court correctly held that these allegations were conclusory and that the plaintiffs did not sufficiently plead "facts about actual, as-applied, coverage for analogous medical or surgical treatment." *Id.* Consequently, this Court found no "plausible grounds to infer" that the defendant applied a more restrictive treatment limitation to mental health coverage in violation of the Parity Act. *Id. (citing Twombly,* 550 U.S. at 556); *see also, e.g.*, *M.N.*, 2020 WL 1644199, at *5–6 (J. Barlow) (unpublished) (dismissing similar allegations because they were conclusory and failed to provide specific supporting facts about disparate treatment); *Mark C. v. United Healthcare Ins. Co.*, 2021 WL 288578, at *3–4 (D. Utah Jan. 28, 2021) (J. Barlow) (unpublished) (same); *Kirsten W. v. California Physicians' Serv.*, 2021 WL 83264, at *3 (D. Utah Jan. 11, 2021) (J. Barlow) (unpublished) (same); *William D. v. United Healthcare Ins. Co.*, 2020 WL 4747765, at *4 (D. Utah Aug. 17, 2020) (J. Barlow) (unpublished) (same).[9]

Plaintiffs make functionally identical allegations here, and thus, Plaintiffs' Parity Act claim suffers from the same deficiency as those claims that this Court has repeatedly dismissed as

---

[9] Many other Utah district court cases have dismissed similar Parity Act claims. *See, e.g.*, *E.W. v. Health Net Life Ins. Co.*, 2020 WL 2543353, at *5–6 (D. Utah May 19, 2020) (unpublished) (dismissing claim where plaintiffs make only a "conclusory" allegation that defendant "does not require individuals receiving treatment at sub-acute inpatient facilities for medical/surgical conditions to satisfy acute medical necessity criteria" and "[a]t most, the well-pled factual allegations establish that [defendant] applied the wrong criteria when evaluating the medical necessity of [plaintiff's] care"); *Sarah W. v. CIGNA Health & Life Ins. Co.*, 2020 WL 1030716, at *2–3 (D. Utah Mar. 3, 2020) (unpublished) (dismissing claim where plaintiffs "fail to allege with specificity facts showing a disparity in [defendant's] application of limitation criteria or *how* a disparity arises between criteria defendant used to deny coverage for [plaintiff's] treatment and criteria for analogous medical or surgical treatment" and declining to "allow [p]laintiffs to conduct a discovery fishing expedition") (internal quotation marks and citations omitted).

insufficient. For example, Plaintiffs' primary (and conclusory) allegation is that the "medical necessity criteria" used by Defendants "for the intermediate level of mental health treatment benefits at issue in this case are more stringent or restrictive than the medical necessity criteria the Plan applies to analogous intermediate levels of medical or surgical benefits." Am. Compl. ¶ 46. Plaintiffs also broadly assert that Defendants applied certain requirements in evaluating C.F.'s treatment that they allegedly did not apply for "intermediate level treatment of medical and surgical conditions" like a skilled nursing or rehabilitation facility, which "resulted in a disparity because the Plan denied coverage for mental health benefits where the analogous levels of medical or surgical benefits would have been paid." *Id.* ¶¶ 49, 52–53. Plaintiffs then simply parrot the language of the regulations implementing the Parity Act. *Compare id.* ¶ 54, *with* 29 C.F.R. § 2590.712(c)(4)(i). As explained above, such allegations fail to state a claim because Plaintiffs do not adequately allege facts about "actual, as-applied coverage" for specific comparator treatments, despite Defendants having provided to Plaintiffs all the specific treatment criteria they requested. *See, e.g.*, *Kirsten W.*, 2021 WL 83264, at *3 (dismissing Parity Act claim).

### 2. *Plaintiffs' Allegations Are Contradicted by the Plan's Terms, the Medical Necessity Criteria, and the Benefits Determination Letters Cited by Plaintiff.*

The Plan's terms, the medical necessity criteria, and the benefits determination letters expressly cited by Plaintiffs in the Amended Complaint further demonstrate the implausibility—indeed, the inaccuracy—of Plaintiffs' limited allegations regarding a disparity in treatment limitations.

***Self-Care Criteria.*** Plaintiffs contend that Defendants' consideration of C.F.'s ability to "provide for his basic self-care needs" is a treatment limitation that Defendants allegedly applied to C.F.'s treatment, but purportedly did not apply to medical and surgical analogues in accordance

with "generally accepted standards of medical practice" "as outlined in the terms of the Plan." *See* Am. Compl. ¶¶ 52–53. However, at the same time, Plaintiffs allege that "skilled nursing facilities" are an appropriate medical or surgical analogue to mental health treatment. *Id.* ¶ 48. The Plan's terms explicitly apply the same "self-care" consideration to treatment in a "skilled nursing facility." *See* Ex. A, at 110 (specifying that, for a "Skilled Nursing Facility" to be an eligible expense under the Plan, "[s]ervices to help restore patients to self-care in essential daily living activities must be provided"). Likewise, the medical necessity criteria regarding skilled nursing facilities also apply this consideration. *See, e.g.*, Ex. C, at ADMIN_BF_0000002412 ("Cognitive inability to manage care and no caregiver available" under the heading "Treatment precluded in a lower level of care"). As such, Plaintiffs' conclusory allegations of a disparity in treatment limitations for Plan benefits are simply wrong.

*Safety Criteria.* In addition, Plaintiffs allege that Defendants' failure to consider C.F.'s "safety" is another treatment limitation where Defendants purportedly disfavored C.F.'s treatment at Forest Heights Lodge as compared to a medical or surgical analogue. Am. Compl. ¶¶ 48–49, 53. But this argument is belied by the benefits determination letters that Plaintiffs recite in the Amended Complaint, as well as the residential treatment center medical necessity criteria. The letters expressly state that Defendants took C.F.'s "safety" into account in evaluating the medical necessity criteria for C.F.'s treatment. *See id.* ¶ 22 (quoting December 9, 2019 letter explaining that C.F.'s treatment "does not meet medical necessity criteria because the documentation provided did not indicate [C.F.] required psychiatric interventions that could not be carried out *safely* and effectively at a less intensive level of care") (emphasis added); *id.* ¶ 28 (quoting February 13, 2020 letter explaining that C.F.'s treatment "does not meet medical necessity criteria because the documentation provided indicated [C.F.] was medically stable, able to provide for his

basic self-care needs, and did not require psychiatric interventions that could not be carried out *safely* and effectively at a less intensive level of care") (emphasis added). The medical necessity criteria also expressly evaluated safety. *See, e.g.*, Ex. B, at ADMIN_BF_0000001595 ("the individual is not sufficiently stabilized so that he/she can be *safely* and effectively treated at a less restrictive level of care") (emphasis added).

***Separate Criteria for Rehabilitation and Hospice Facilities.*** The only new allegations regarding treatment disparity that Plaintiffs added to the Amended Complaint are conclusory and insufficient for Plaintiffs to state a Parity Act claim. Plaintiffs vaguely assert that, unlike for residential mental health treatment centers, Defendants do not have documents describing medical necessity criteria separate from those outlined in the Plan for "sub-acute inpatient rehabilitation facilities" and "sub-acute inpatient hospice facilities," and so Defendants purportedly "apply more criteria to limit coverage for sub-acute inpatient mental health and substance abuse treatment facilities." Am. Compl. ¶¶ 55–60.

As an initial matter, as explained above, the Plan applies *more restrictive* "acute" criteria to be eligible for rehabilitation facility treatment benefits (*see* Ex. A, at 109), as opposed to the *less restrictive* "sub-acute" criteria that Plaintiffs argue are applicable to C.F.'s treatment (*see, e.g.*, Am. Compl. ¶ 52). Because the Plan does not provide benefits for a "sub-acute" rehabilitation facility, Plaintiffs' allegation that there is no separate document describing medical necessity criteria for such a facility is in accordance with Plan terms and has no bearing on whether there is a treatment disparity in violation of the Parity Act. In fact, Plaintiffs' allegation that a rehabilitation facility is an appropriate medical or surgical analogue (*see* Am. Compl. ¶¶ 47, 49), if true, would only reinforce that it is implausible for C.F.'s mental health treatment to have been subject to limitations that were more restrictive than those for medical or surgical analogues under the Plan.

16

Moreover, as courts have repeatedly recognized, the mere existence of a document apart from the Plan that describes treatment criteria does not necessarily indicate more stringent or restrictive treatment limitations. *See, e.g.*, *Julie L. v. Excellus Health Plan, Inc.*, 447 F. Supp. 3d 38, 48 (W.D.N.Y. 2020) ("The mere fact that the InterQual Criteria includes criteria not articulated in the Plan does not mean that the InterQual Criteria are more restrictive."). Such separately identified criteria can simply "help interpret what treatment is appropriate and consistent" with plan terms. *Id.* (internal quotation marks omitted); *see also N.F. by & through M.R. v. Premera Blue Cross*, 2021 WL 4804594, at *4 (W.D. Wash. Oct. 14, 2021) (unpublished) ("While InterQual's criteria are certainly more *specific* than the plan, the Court does not find them to be more stringent.") (emphasis in original). In addition, as explained by the court in *James C. v. Anthem Blue Cross & Blue Shield*, "the Parity Act does not require equality between nonquantitative limitations on treatment," but rather, "'any processes, strategies, evidentiary standards, or other factors used in applying the nonquantitative treatment limitation'" to treatment at a Residential Treatment Center must be '*comparable* to, and are applied no more stringently than, the processes, strategies, evidentiary standards, or other factors used in applying the limitation with respect to'" a medical or surgical analogue. 2021 WL 2532905, at *19 (D. Utah June 21, 2021) (unpublished), *appeal dismissed* (Nov. 30, 2021) (emphasis in original) (quoting 45 C.F.R. § 146.136(c)(4)(i)). In short, to be in compliance with the Parity Act, the plan treatment "definitions and guidelines" do not need to be "identical," as long as they are "comparable" "as a whole." *Id.* at *20.

Here, Plaintiffs make the conclusory assertion that the mere existence of separate criteria for residential treatment centers indicates an impermissible disparity, but the Amended Complaint is devoid of any facts actually *comparing* the criteria for residential treatment centers with that for

a medical or surgical analogue and explaining how the residential treatment center criteria is allegedly more stringent or restrictive. An analysis of the Plan terms and medical necessity criteria regarding hospice care demonstrates the implausibility of Plaintiffs' allegations of a coverage disparity.

First, Plaintiffs conveniently ignore that the Plan does not include a definition for a residential treatment center. In contrast, the Plan does include a definition of hospice care that details many requirements.[10] In other words, the Plan's terms provide for far more detailed criteria for hospice care than for residential treatment centers. That there is a separate document outlining the criteria for residential treatment centers does not establish that there is "more criteria" being applied there, much less more *stringent or restrictive* criteria. Second, a comparison of the separate criteria for residential treatment centers and the Plan's criteria for hospice care does not indicate an impermissible disparity. For example, both treatments' criteria require offering 24 hours a day, 7 days a week service, in addition to the services of medical professionals with certain experience.

---

[10] *See* Ex. A, at 105 ("Hospice means an agency that provides counseling and incidental medical services and may provide room and board to terminally ill individuals and which meets all of the following requirements: (1) has obtained any required state or governmental Certificate of Need approval; (2) provides 24-hour-a-day, 7 days-a-week service; (3) is under the direct supervision of a duly qualified Physician; (4) has a nurse coordinator who is a registered nurse (R.N.) with 4 years of full-time clinical experience, at least 2 of which involved caring for terminally ill patients; (5) has a social service coordinator who is licensed in the jurisdiction in which it is located; (6) is an agency that has as its primary purpose the provision of hospice services; (7) has a full-time administrator; (8) maintains written records of services provided to the patient; (9) the Employees are bonded and it provides malpractice and malplacement insurance; (10) is established and operated in accordance with the applicable laws in the jurisdiction in which it is located and, where licensing is required, has been licensed and approved by the regulatory authority having responsibility for licensing under the law; (11) provides nursing care by a registered nurse (R.N.), a licensed practical nurse (L.P.N.), a licensed physical therapist, certified occupational therapist, American Speech Language and Hearing Association certified speech therapist or a certified respiratory therapist; and (12) provides a home health aide acting under the direct supervision of one of the above persons while performing services specifically ordered by a Physician.").

*See* Ex. A, at 105 (hospice must provide 24 hours a day, 7 days a week service, as well as have medical professionals including a nurse); Ex. B, at ADMIN_BF_0000001591–1592 (residential treatment center must provide 24 hours a day, 7 days a week service, as well as have medical professionals including a nurse). And even if there were any different standards, because the medical necessity criteria for residential treatment centers and for hospice care are both based on generally accepted standards of medical practice pursuant to the Plan terms (Ex. A, at 107), and because Plaintiffs do not allege any facts that may show any differences between the criteria for residential treatment centers and those for hospice care other than those that may be attributable to differences in those standards, Plaintiffs fail to establish an impermissible treatment disparity. *See, e.g.*, *James C.*, 2021 WL 2532905, at *20 ("The fact that the guidelines for mental health and medical/surgical treatment impose different thresholds for determining when an illness is severe enough to necessitate treatment is not an impermissible disparity; it is a logical consequence of the undeniable reality that every illness is inherently different and requires different treatment.").

## II.    Plaintiffs' Parity Act Claim Is Impermissibly Duplicative of Their Benefits Claim.

Plaintiffs' Parity Act claim should also be dismissed because it is merely a repackaged benefits claim under ERISA Section 502(a)(1)(B). The Supreme Court has held that recovery under ERISA Section 502(a)(3) is only available where Congress has not "elsewhere provided adequate relief for a beneficiary's injury." *Varity Corp. v. Howe*, 516 U.S. 489, 515 (1996). Consistent with the Supreme Court's instruction, courts in Utah have correctly held that, "when a plaintiff can state a claim for relief under 29 U.S.C. § 1132(a)(1)(B), the plaintiff cannot maintain simultaneously a claim under 29 U.S.C. § 1132(a)(3)." *See Lefler v. United HealthCare of Utah, Inc.*, 162 F. Supp. 2d 1310, 1324–25 (D. Utah 2001), *aff'd*, 72 F. App'x 818 (10th Cir. 2003) (emphasis omitted).

Courts in Utah have recognized a specific exception allowing a plaintiff to simultaneously bring a Section 502(a)(1)(B) and 502(a)(3) claim "if the claims were directed toward remedying two different injuries, even if the two claims sought the same remedy," in order "to ensure [the plaintiff] could be made whole." *E.M. v. Humana*, 2019 WL 4696281, at *5 (D. Utah Sept. 26, 2019) (unpublished) (quoting *Williams v. FedEx Corp. Servs.*, 2015 WL 248570, at *4 (D. Utah Jan. 20, 2015)). Stated another way, a Section 502(a)(3) claim is permissible in this context only where it is "based on an injury separate and distinct from the denial of benefits or where the remedy afforded by Congress under [Section 502(a)(1)(B)] is otherwise shown to be inadequate." *E.M.*, 2019 WL 4696281, at *5 (internal quotation marks and citations omitted).

In *E.M.*, the plaintiffs alleged that the defendants violated the Parity Act by denying benefits after applying "acute care medical necessity criteria in order to obtain coverage for continued residential treatment" instead of applying criteria as required under "generally accepted standards of medical practice" for "sub-acute inpatient treatment settings such as skilled nursing facilities, inpatient hospice care, and rehabilitation facilities." *Id.* at *4. The *E.M.* court dismissed the plaintiffs' Parity Act claim under Section 502(a)(3) as duplicative of their benefits claim under Section 502(a)(1)(B). *Id.* at *5. The court correctly determined that the claims "essentially allege the same injury of denial of benefits and seek the same relief of payment of benefits." *Id.* The court likewise determined that the benefits claim offered an adequate remedy because, "although Plaintiffs list various forms of equitable remedies, . . . these remedies in effect amount to a determination and payment of benefits." *Id.*

Plaintiffs' allegations here are materially identical to the dismissed allegations in *E.M.* In both their benefits claim (Count I) and their Parity Act claim (Count II), Plaintiffs allege only an economic injury directly tied to the denial of their benefits claim, not an "injury separate and

distinct from the denial of benefits." *See, e.g.*, Am. Compl. ¶ 36 (benefits claim alleging that Defendants "failed to provide coverage for C.F.'s treatment in violation of the express terms of the Plan"); *id.* ¶¶ 48, 52–53 (alleging Defendants violated the Parity Act by denying their benefits claim using "arbitrary requirements inconsistent with the terms and conditions of the Plan" regarding medical necessity criteria for sub-acute inpatient treatment settings).

Moreover, Plaintiffs' myriad requests for equitable relief "in effect amount to a determination and payment of benefits." *See id.* ¶ 64(a)–(d), (f)–(h). Plaintiffs request (i) a declaration that Defendants' denial of benefits violated the Parity Act, (ii) an injunction ordering Defendants to comply with the Parity Act, (iii) an order of reformation to modify the application of the Plan's medical necessity criteria, and (iv) an order "equitably estopping the Defendants from denying the Plaintiffs' claims." *Id.* Whether taken individually or collectively, Plaintiffs' requests are all essentially benefits determinations, as their purpose is to require Defendants to approve and pay for Plaintiffs' benefits claim under the Plan. Similarly, Plaintiffs' request that the Court enter an order (i) "requiring disgorgement of funds" obtained by Defendants, (ii) imposing a "surcharge requiring the Defendants to provide payment to Plaintiffs as make-whole relief," and (iii) requiring Defendants to pay restitution is also simply a request to effectuate the payment of Plan benefits that they are seeking in Count I. *Id.*

The only other relief requested in Count II is an order pertaining to other Plan participants and beneficiaries (*id.* ¶ 64(e)), which, as explained further below, *see infra* Section IV, Plaintiffs lack standing to request.

Because Plaintiffs' requests for relief under ERISA Section 502(a)(3) can be adequately remedied through their benefits claim under ERISA Section 502(a)(1)(B), their repackaged and duplicative Parity Act claim should be dismissed.

### III.    Plaintiffs Were Not Entitled to Any Parity Act Compliance Analysis Documents.

Plaintiffs' efforts to bolster their Parity Act claim with allegations that Defendants did not provide them with a Parity Act "self-compliance analysis" (Am. Compl. ¶¶ 62–63) fail for two reasons. First, "a failure to provide requested information does not support a [Parity Act] violation," but rather only "a potential claim for statutory penalties under ERISA." *See Kerry W. v. Anthem Blue Cross and Blue Shield*, 2019 WL 2393802, at *4 n.4 (D. Utah June 6, 2019) (unpublished) (citing 29 U.S.C. § 1024(b)(4) & § 1132(c)) (dismissing Parity Act claim). Plaintiffs have made no such claim. Second, even if the allegations could support a Parity Act claim, Defendants were under no obligation to provide any self-compliance analysis to a plan participant upon request before the Consolidated Appropriations Act amended the Parity Act, effective in February 2021. *See* 29 U.S.C. § 1185a(a)(8)(A); 42 U.S.C. § 300gg-26; 26 U.S.C. § 9812. Here, Plaintiffs allege that they requested that the Plan provide a "formal parity analysis" during their benefit claim and appeal process, which was completed by August 4, 2020 (Am. Compl. ¶¶ 13, 18, 31)—well before any such requirement was enacted. Thus, in the absence of any requirement at the time of their request, there can be no actionable violation.

### IV.    Plaintiffs Lack Standing to Seek Relief Pertaining to Other Participants and Beneficiaries of the Plan.

Even if Plaintiffs did sufficiently state a Parity Act claim—and they do not—the Court should dismiss under Rule 12(b)(1) Plaintiffs' request for relief relating to other Plan participants and beneficiaries. Specifically, Plaintiffs seek "[a]n order requiring an accounting by the Defendants of the funds wrongly withheld by each Defendant from participants and beneficiaries of the Plan as a result of the Defendants' violations of [the Parity Act]." Am. Compl. ¶ 64(e).

It is a jurisdictional prerequisite that a plaintiff must have Article III standing to seek relief. To establish standing sufficient to survive a Rule 12(b)(1) challenge, a plaintiff must show an injury in fact, a causal connection between that injury and the conduct complained of, and "a likelihood that the injury will be redressed by a favorable decision," which the Supreme Court has stated "mean[s] that the prospect of obtaining relief from the injury as a result of a favorable ruling is not too speculative." *Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 663–64 (1993) (internal quotation marks omitted). This requires a plaintiff to "demonstrate standing *separately* for *each* form of relief sought." *See DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 335, 352 (2006) (emphasis added) (internal quotation marks omitted); *Bronson v. Swensen*, 500 F.3d 1099, 1106 (10th Cir. 2007) ("Each plaintiff must have standing to seek each form of relief in each claim."). Courts thus have authority under Rule 12(b)(1) to dismiss particular forms of requested relief. *See, e.g., City of Los Angeles v. Lyons,* 461 U.S. 95, 109 (1983) (plaintiff had standing to pursue damages but not injunctive relief); *Grider v. City & Cty. of Denver*, 958 F. Supp. 2d 1262, 1266, 1270 (D. Colo. 2013) (limiting available relief under Rule 12(b)(1)).

Plaintiffs have brought this lawsuit challenging the denial of their claim for benefits for C.F.'s mental health treatment. Plaintiffs' alleged economic injuries plainly cannot be redressed by "an accounting" of funds allegedly withheld from *other* Plan participants and beneficiaries. Because Plaintiffs lack standing to pursue this remedy, the Court should dismiss the portion of Plaintiffs' Parity Act claim seeking an accounting of funds relating to other participants and beneficiaries for a lack of subject matter jurisdiction.

## **CONCLUSION**

For the foregoing reasons, Cushman Plan and Quantum respectfully request that the Court

dismiss Plaintiffs' Parity Act claim (Count II) with prejudice.

Dated:  April 4, 2022                                Respectfully Submitted,

                                                                */s/ Abigail Bartine*
                                                                Abigail Bartine
                                                                Elaine Liu
                                                                MAYER BROWN LLP

                                                                *Attorneys for Defendant*
                                                                *Cushman & Wakefield Benefit Plan*

                                                                */s/ Rachel A. Smoot* (with consent)
                                                                David J. Butler
                                                                Rachel A. Smoot
                                                                TAFT STETTINIUS & HOLLISTER LLP

                                                                *Attorneys for Defendant*
                                                                *Quantum Health, Inc.*

## CERTIFICATE OF SERVICE

I, Elaine Liu, an attorney, hereby certify that, on April 4, 2022, I caused a true and correct copy of the foregoing **DEFENDANTS CUSHMAN & WAKEFIELD BENEFIT PLAN AND QUANTUM HEALTH, INC.'S PARTIAL MOTION TO DISMISS THE AMENDED COMPLAINT** to be filed and served electronically via the court's CM/ECF system. Notice of this filing will be sent by e-mail to all persons by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF system.


*/s/ Elaine Liu*
Elaine Liu